# Wytheville

## Fannie Smith v. Commonwealth.

### June 14, 1923.

1. Witnesses—*Criminal Law—Impeachment of Witness—Cross-Examination—Contradictory Statements.*—In a prosecution for malicious cutting, where a witness for the defense had given a detailed account of the assault, it was proper to permit the Commonwealth's attorney to ask her on cross-examination if she had not made a different statement, and her reply being in the negative, the attorney for the Commonwealth had the right to contradict her by the introduction of a witness who testified that she had made such different statement to him.

2. Witnesses—*Impeachment—Contradictory Statements.*—A witness must be prepared to sustain every statement made in his testimony. He cannot complain of any surprise at an effort to discredit him when the evidence shows he has made contradictory statements on other occasions.

3. Witnesses—*Impeachment—Foundation for Introduction of Contradictory Statement.*—In the instant case, a prosecution for malicious cutting, a witness for the defense was asked on cross-examination whether she had not told another after the fight "that you knocked Mary Braxton down and your sister jumped on her and cut her with a knife?" Witness replied in the negative. The defense contended that no foundation had been laid to contradict the testimony of the witness.

    *Held:* That the form of the question as asked was sufficient for that purpose.

4. Witnesses—*Self-Incrimination—Section 4781 of the Code of 1919—Waiver of Privilege.*—Under section 4781 of the Code of 1919 no statement made by a witness upon a legal examination, unless made when examined as a witness in his own behalf, can be used as evidence against him. But where, under section 4778 of the Code of 1919, a prisoner subsequently goes on the stand as a witness in his own behalf, he thereby waives the right afforded him by section 4781, and may be cross-examined as to his statements at such examination, and the Commonwealth may contradict his testimony thus adduced.

5. Witnesses—*Criminal Law—Accused as Witness—Waiver of Privilege—Cross-examination—Impeachment.*—Section 4778 permits the accused

himself to testify, but to do so he must accept all of the terms of that section, and (1) "be deemed to have waived his privilege of not giving evidence against himself;" and (2) "be subject to cross-examination as any other witness." The right to cross-examine him "as any other witness" implied the right to impeach his credibility by the same rules as those applicable to other witnesses. To discredit the witness, if there be reason to doubt his truthfulness, is one of the legitimate and leading objects of cross-examination.

6. Criminal Law—*Evidence—Weapons and Instruments.*—The general rule is that weapons and instruments employed in the commission of the crime are admissible in evidence.

7. Assault and Battery—*Malicious Cutting—Introduction of Knife in Evidence.*—In a prosecution for malicious cutting accused, having voluntarily testified that she cut prosecutrix with a knife to protect herself, waived her right to object to questions concerning the identity of the knife or its introduction in evidence.

8. Assault and Battery—*Malicious Cutting—Introduction of Knife in Evidence—Harmless Error.*—In the instant case, a prosecution for malicious cutting, there was ample evidence, without the introduction in evidence of the knife with which the cutting was done, to warrant a verdict of guilty.

   *Held:* That accused was not prejudiced by the introduction of the knife in evidence.

9. Arguments of Counsel—*Commonwealth Attorney's Argument in Urging the Admissibility of Certain Evidence—Case at Bar.*—In the instant case, a prosecution for malicious cutting, the Commonwealth's attorney, in the presence of the jury, stated that: "There would be a grave miscarriage of justice if the court did not allow the magistrate to testify to what the accused stated at the magistrate's trial." The evidence sought to be introduced was plainly admissible, and therefore the attorney for the Commonwealth clearly had the right to urge the court not to exclude it.

   *Held:* That the language used by the Commonwealth's attorney was not such as was calculated to prejudice or mislead the jury, and its use, under the circumstances, was not ground for a reversal of a judgment of guilty.

Error to a judgment of the Circuit Court of Amherst county.

*Affirmed.*

The opinion states the case.

*William K. Allen,* for the plaintiff in error.

*John R. Saunders, Attorney General, J. D. Hank, Jr.,
Assistant Attorney General,* and *Leon M. Bazile, Second
Assistant Attorney General,* for the Commonwealth.

West, J., delivered the opinion of the court.

Fannie Smith was convicted of malicious cutting with
intent to kill and sentenced to the penitentiary for one
year.   To that judgment this writ of error was awarded.

The accused relies upon seven assignments of error.

[1] The first and sixth assignments will be considered
together.   The first is to the ruling of the trial court in
permitting the attorney for the Commonwealth to ask
Sallie Ann Coles, sister of the accused and one of the
participants in the assault, the following question:
"Q.  Didn't you tell Lelia Jones, in the presence of
Will Jones, on the day after the fight, that you knocked
Mary Braxton down and your sister jumped on her and
cut her with a knife?"   To which she replied, "I did not
tell her that."

The sixth assignment rests upon the action of the
trial court in permitting Will Jones to testify, for the
purpose of contradicting Sallie Ann Coles, as follows:

"Q.  Tell what statement Sallie Ann Coles made to
you the day after the fight she and her sister, the ac-
cused, had with Mary Braxton?"   To which the wit-
ness answered: "She first hit Mary with a stick and
then her sister cut Mary Braxton, and that she, the wit-
ness, cut her own finger."

It is contended that Sallie Ann Coles was a co-con-
spirator and that statements made by her after the
commission of the offense were not admissible against
the accused, and that it was error to permit Will Jones
to contradict her.   We cannot concur.   Coles, testify-
n g as a witness for the defense, had given a detailed ac-

count of the assault and it was entirely proper to permit the Commonwealth's attorney to ask her on cross-examination if she had not made a different statement. Her reply being in the negative the attorney for the Commonwealth had the right to contradict her.

[2] A witness must be prepared to sustain every statement made in his testimony. He cannot complain of any surprise at an effort to discredit him when the evidence shows he has made contradictory statements on other occasions. *Forde* v. *Commonwealth*, 16 Gratt. (57 Va.) 558; *Smith* v. *Watson, Sumner & Co.*, 82 Va. 712, 1 S. E. 96; *Fortune* v. *Commonwealth*, 133 Va. 669, 112 S. E. 861.

[3] The contention that no foundation was laid to contradict the testimony of witness Coles is equally untenable. The form of the question asked was sufficient for that purpose. *Smith* v. *Watson, Sumner & Co., supra.*

The second and fourth assignments will likewise be considered together.

[4, 5] The second complains of the action of the court in allowing the accused, when testifying in her own behalf, to be asked on cross-examination:

"Q. Did you testify at the justice's trial, when you were being tried on this charge before Mr. Ware, that you took the knife over there to kill Mary?" Her answer was, "No; I didn't."

And the fourth assignment relates to the action of the court in allowing the Commonwealth to contradict the foregoing answer of the accused by the rebuttal testimony of W. Q. Ware and W. O. Burford.

It is not denied that the accused did not testify before Justice Ware, *as a witness in her own behalf,* but was called to the stand by him and compelled to answer his questions. The accused contends that under section

4781 of the Code her alleged statement before the justice was inadmissible as testimony against her on her trial in the circuit court.

It is true, under section 4781, *supra*, that no statement made by a witness upon a legal examination, unless made when examined as a witness in his own behalf, can be used as evidence against him. But where, under section 4778 of the Code, a prisoner subsequently goes on the stand as a witness in his own behalf, he thereby waives the right afforded him by section 4781.

In *Thaniel* v. *Commonwealth*, 132 Va. 795, 111 S. E. 259, Kelly, P., speaking for the court upon this question, said: "Section 4778 permits the accused himself to testify, but to do so he must accept all of the terms of that section, and (1) 'be deemed to have waived his privilege of not giving evidence against himself,' and (2) 'be subject to cross-examination as any other witness   *   *'.    The right to cross-examine him 'as any other witness' implied the right to impeach his credibility by the same rules as those applicable to other witnesses.    To discredit the witness, if there be reason to doubt his truthfulness, is one of the legitimate and leading objects of cross-examination."

To the same effect, the law is declared in *Fitzpatrick* v. *United States*, 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078; *Commonwealth* v. *Tolliver*, 119 Mass. 312; *Bram* v. *United States*, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568; *Hicks* v. *State*, 99 Ala. 169, 13 So. 375.

In the case of *Harrold* v. *Territory of Oklahoma*, 18 Okla. 395, 89 Pac. 202, 10 L. R. A. (N. S.) 604, 11 Ann. Cas. 818, the court said: "Now the prisoner is permitted to testify the same as any other witness, if he voluntarily offers himself.    So long as he remains silent, the reason for the rule excluding confessions not voluntarily made remains, but, when he waives his privilege

and becomes a witness for himself, the reason for the rule ceases, and he has the privilege and opportunity to deny or admit any statement or admission attributed to him, and if he admits making any, he has the right to explain all the conditions and circumstances under which the same were given  *  *  *. We see no sound reason why a prisoner, charged with a crime and who voluntarily becomes a witness in his own behalf, should any longer be entitled to any special privileges which are not allowed every other witness."

The third assignment of error is to the action of the trial court in permitting the Commonwealth to introduce in evidence the knife with which the cutting was done.

On the day of and prior to the examining trial, while in custody, the accused was requested by the constable to get the knife used in the assault. She first refused, claiming it was the only one she had and that she needed it. The constable insisted and she gave the knife to him. While she was testifying as a witness in her own behalf, and after she had stated she cut Mary Braxton, the Commonwealth's attorney presented the knife and asked her to identify it. She did so, and the knife was introduced in evidence.

[6] The general rule is that weapons and instruments employed in the commission of the crime are admissible in evidence. 16 C. J. p. 618; *Lucchesi* v. *Commonwealth*, 122 Va. 872, 94 S. E. 925.

[7] Besides having voluntarily testified that she cut Mary Braxton with a knife to protect herself, she waived her right to object to questions concerning the identity of the knife or its introduction in evidence. *Thaniel* v. *Commonwealth, supra.*

[8] The jury saw the cuts made by the knife on the neck and cheek of the Braxton woman and there was

ample evidence, without the introduction of the knife, to warrant their verdict. It is clear that the accused was not prejudiced by the ruling complained of.

[9] The fifth assignment of error rests upon the statement made by the attorney for the Commonwealth in the presence of the jury relative to the pertinency and materiality of the evidence of Justice Ware and others as to the statements of the accused when testifying in the magistrate's court. The exact language complained of is, "There would be a grave miscarriage of justice if the court did not allow the magistrate to testify to what the accused stated at the magistrate's trial."

For the reasons stated in discussing the second and fourth assignments, the evidence sought to be introduced was plainly admissible. If so, the attorney for the Commonwealth clearly had the right to urge the court not to exclude it. The language used was not such as was calculated to prejudice or mislead the jury, and its use, under the circumstances, is not ground for a reversal of the judgment.

The seventh assignment contains nothing which has not been disposed of in considering the other assignments, except the action of the court in refusing to set aside the verdict because it is contrary to the law and the evidence, and this question is not discussed in the petition for the writ of error. It is not contended that the verdict is without evidence to support it.

We find no merit in either of the assignments of error, and the judgment will be affirmed.

*Affirmed.*